The final case scheduled for oral argument this morning are two appeals, No. 20-2319 and 20-2587, LCS Group v. Shire Development. And this one is entirely in person, I think. Great. Thank you, Your Honor, and may it please the Court. My name is Steven Lobbin. I'm here representing the appellants. And the primary issue on this appeal, although there are many, is Rule 11. Rule 11 says a sanction should—must, must be limited to what's necessary to deter the sanctioned conduct. I am a patent attorney. I have a friend from college who had an issue. I went outside my comfort zone and I brought a case for him. His wife had died. His contracting party had breached, in our view, the contract. And I went outside my zone. I overpled the case. We're taught to be zealous advocates. This was a personal relationship. I made a mistake. And the primary issue for us on this appeal, for myself and my client, LCS, and their principal, Dr. Sanfilippo, is what rule would have a sanction in this amount as appropriate for the behavior that was sanctioned by the district court, notwithstanding the other issue? So you don't doubt that the amount is a proper reflection of counsel fees? I do, but the case law is very consistent that this type of situation, the focus should be, as Rule 11 states specifically, must be limited to what's necessary. The focus is on us, the sanctioned counsel and client, not on— What I'm concerned about, you said this was outside your—this case was outside your comfort zone. Could you elaborate on that in a sentence or two? Why was that the case? Certainly. The client in this case, Dr. Sanfilippo and I, very close personal friends at the University of Virginia where I went to college in the 80s. I'm an engineer. I went to law school. I became a patent lawyer. Patent lawyer. I'm a member of the patent bar. I have what I believe to be an excellent 25-year history of working for large firms, as my opponent does. I understand how large firms work. I started my own firm three years ago, and I'm here— No, so the reason you were outside of the comfort zone, correct me if I'm wrong, is that now you were faced in litigation over a breach of contract, which involves civil procedure rules that govern that kind of action, and that was not your comfort zone. Correct. It was primarily the substance. The problem is you took the case in knowing it was outside your comfort zone. That's the obvious problem. That's what's gotten you into—had a problem here, created a problem for you. Correct. I don't think you'll be doing it again. I will not, and for the three years since, it's been raised in cases that I have litigation in the patenary all the time. Counsel raising this case as an example of certain things trying to bloody me before various courts. It hasn't worked because, at the same time, this one case stands in stark contrast to my 25 years of very good service, very good advocacy. Nonetheless, we have a situation here where the court found that sanctions were justified and where you pursued a RICO claim against a company— That's correct. —and that has been rejected. A RICO claim has both reputational injury, potentially, for the charged person or entity, and it's also obviously cost a lot of money to defend. And based on the district court's finding that it was not a well-founded suit and that Rule 11 sanctions are appropriate, it may be that your personal story is one that gives comfort, but it doesn't really address the whole situation, it seems to me. What type is it? In particular, maybe we could just focus also on the attorney's fee ruling by the magistrate judge originally, and as to which there were no objections filed within the 14-day period. So whether we treat it as a dispositive and kind of final ruling or an R&R, no objections were filed at that point. Isn't that correct? That's correct. There are certainly some procedural issues, that being one of them. We did file a motion for reconsideration, which I understand is not technically objections, but certainly under Rule 72, the substance is the same. The name is different, certainly. We did effectively object, and I want to bring to the Court's attention two new cases on that Rule 11, particularly the safe harbor issue. There's a case, more a bit, 393 F sub 2nd 353. Sorry, these are cases that have just come to your attention. They're not cases that have been decided in the interim. Is that right? In the interim, yes. What's the date of that case? This one is 2019, so that one technically not, so forget that one. There's a Thompson case from September 1 of 2021, so that was just a month ago, from the Southern District Court, of course. But it notes, as we put in our brief, the Rules Committee on Rule 11 makes plain that the withdrawal of a claim, particularly here the RICO claim, need not be a formal affair. When you bring something like this up, the ordinary way to raise it for the Court's consideration is by a Rule 28J letter, and that also gives your opponent a chance to prepare, review the case, and comment on your potential use of it. You might consider doing that in the future. And if you'd like to send us a Rule 28J letter calling our attention to it, we're happy to note the citation now, but you should be aware of that as the common practice. Yes. Thank you, Your Honor. And that addresses the RICO claim was a mistake. I made a mistake. I was overzealous. This was a personal friend. His wife passed away during the time where they were, we allege, breaching the contract, and lots of players involved. I'm not a RICO lawyer. I made a big mistake. I withdrew the claim during the 21-day safe harbor. The Court disagreed, but the Court is wrong on the law, and that's what this Court is for, to judge the circumstances of this case correctly based on the law. And the law says during that 21-day safe harbor period, it's not a formal affair. What I should have done is filed a Rule 41 dismissal. What I did was I emailed counsel and said, we considered your Rule 11 issue, but we're not pursuing that claim. What I did a few days later was formally in a brief to the Court. We're not pursuing that claim. That claim is done. So I think a correct view of the law is that the safe harbor should have applied, and the district court got that issue wrong. And this is just another case, and I'll put it in a letter, that reaffirms that legal principle. But the fundamental issue is Rule 11 is supposed to deter conduct. I am deterred. I was outside my zone. I'm not a RICO lawyer. I should never have done it. But it's not supposed to put people into bankruptcy. But the point has been made that your venture into uncharted territory for you had consequences for the other side, and had consequences in terms of expenses of legal fees there. You know, that's— But to focus on that is legal error. You've got to focus on what Rule 11 says. And Rule 11 says the focus is on must be limited, must, must be limited to what is necessary to deter conduct.  I'm wondering, do you think deterrence means deterring you or deterring other members of the bar also? I mean, usually deterrence has to do with you and other people who might be tempted to do the same thing. Certainly. That is reasonable. That is within Rule 11. What's necessary to deter me is the amount that I've tried to negotiate with counsel. And being at a big firm and not really caring about negotiating or caring about me, they've rejected that. I cannot afford— There was no negotiation? Pardon? There was no negotiation and no offered compromise? No. None? No. There was a discussion per the court's order. They inserted an unreasonable poison pill, which we discussed in our brief, to quiet my client. He wouldn't agree. I would have agreed. But obviously with the Rule 11 issue, there was a conflict now between me advising my client. Sure, why not? What is it that you're referring to as a poison pill? During the negotiations per the court's order, the court said, please work it out. Work out? The amount. The amount of the sanctions? Correct. If you can't work it out, the opposing party could file a motion. During the period we were trying to work it out, I said, look, I can pay $25,000, maybe even $50,000. I'm a guy. Certainly to deter the bar, any other remedy is fine. I've been—believe me, it's been used against me and publicized. What was the poison pill? What was the poison pill? They will not settle on an amount unless Dr. Sanfilippo agrees never to speak publicly about any of this ever again. He told me— So it wasn't the amount that was the problem. It was the additional condition that was the problem. Correct. Correct. All right. We think we have your arguments. We'll hear from Mr. Fleming. Good morning, Your Honor. May it please the Court, Porter Fleming. Can you hear me? Yes, if you could just raise the microphones, that helps. And if you stand in between the two of them or—yeah, raise them up. Got you. We'll give that a try. Thank you. Thank you, Your Honor. Again, may it please the Court, Porter Fleming of Howe Partners. On behalf of the defendant appellees, Shire, Shire Development, Shire PLC, and Howe Partners. Hearing Mr. Lobbin's arguments today, I won't go into the issues with respect to the merits of the case. I think those have been decided by this Court in its earlier January decision. The only issue that was raised by Mr. Lobbin today is the sanction issue. We believe that the district court was correct in finding Rule 11 sanctions, both with respect to filing a complaint for improper purposes and asserting a frivolous RICO claim. What were the improper purposes? The improper purposes had to do with a LCS reasserted claims relating to a filing—well, the first case was an IPR that was filed at the Patent Office regarding— Interparties review. Interparties review. Yes, an IPR. Sorry. Again, we're both patent lawyers. Yeah. IPR is an interparties patent review, yes. And that involved the 813 patent, which was Dr. Sanfilippo's patent. There were certain activities, without going into all the details, that case ended before the Patent Office. There were comments that are in the district court decision regarding Dr. Sanfilippo's behavior in that proceeding. And to some extent, it goes to what's being called a poison pill. Dr. Sanfilippo had a history— I'm still not sure I heard the answer. There's a history in these cases of Dr. Sanfilippo reaching out to the public community, to the stock market, to Wall Street, submitting a blog on the Internet, raising all kinds of questionable comments about individuals, companies, et cetera. We wanted that to end. That went on in the IPR proceeding. That then went on in a second proceeding that was now filed by Dr. Sanfilippo in South Carolina. And in that proceeding, Dr. Sanfilippo went after the expert witness who filed a declaration in the IPR. Judge Gergel found that to be improper. He can't do that. And now, in this third case, now in the Southern District, the same claims are being brought again with respect to fraud, allegations regarding the same declaration. And so that was improper purpose. And as Judge Torres in the district court here determined, Sanfilippo, LCS, the party, Mr. Laban, and Foundation Law Group were all on notice of the improper nature of these fraud claims. They came again—he brought them again and maintained them again in New York, and they were found to be for an improper purpose. The second issue is the RICO claim, and I have to correct Mr. Laban on some points here. We followed the correct procedure. We gave notice to Mr. Laban with respect to the deficiencies in his RICO claims, and pursuant to the safe harbor provisions of Rule 11, he could have withdrawn the RICO claim. He didn't do that. And that was an issue that, A, one could argue he's waived because he didn't raise that in his opposition to the sanction motion. He's just raised it now. And so to the extent the Court's going to entertain that, he never argued the waiver issue either, whether Judge Torres was correct to find a waiver. We believe it has been waived. But in any event, if you read Judge Torres's decision, she considered the safe harbor, and the bottom line is Mr. Laban and his firm did not withdraw the RICO claim within 21 days, period. And if they had done that, there would be no sanctions. We heard a little bit about deterrent from Mr. Laban, and I think the magistrate was very specific when he had a hearing on setting the amount of damages. And during that hearing, he raised Mr. Laban's history a little bit, and specifically five cases. And that came up because Mr. Laban made reference to 20-some years of not having issues with sanctions and Rule 11. And upon basically cross-examination by the magistrate judge, Mr. Laban had to admit that he had been sanctioned and that his clients had been sanctioned. And the magistrate went on to say, and I'm looking at A. 288 in the appendix, on the record before the Court, the Court finds that a five-figure award is not adequate as a deterrent. Then following the analysis of these five cases and Mr. Laban's record and his representations of those cases, the Court went on to say, in view of the foregoing cases, the Court finds that Laban's statements in this declaration that, quote, no court has ever imposed Rule 11 sanctions on him or any of his clients, close quote, and that he has, quote, never been in a very difficult position as he is now before this Court, close quote, were designed to mislead the Court. In this circumstances, the Court finds that a six-figure sanction is needed in order to have an adequate deterrent effect.  As Your Honors have made reference, there was no Rule 72 objections, either under 72A or 72B. That does get us to our cross-appeal, which we've raised, about whether that's a dispositive or nondispositive issue. But does it really matter whether it's dispositive or nondispositive if the procedural steps were not taken to either file an appeal or to object to an honor and honor? Your Honor, we agree that because whether it's 72A is nondispositive or 72B dispositive, there were no proper objections or timely objections within the 14 days. So that is exactly correct. How it does become an issue and why we still think our cross-appeal is appropriate, and we encourage the Court to rule that a Rule 11 sanction is something that a magistrate judge can be referred on a nondispositive basis, is that when you determine now what the post-judgment interest is, it goes to when do you start the clock. And so if the clock started back in March of 2019 when Magistrate Judge Aaron issued his decision, that would start that versus if it was a dispositive issue and you needed a report and recommendation, and then you need Judge Torres to adopt it or sign off on it, that would be a later time, and that would be June of 2020. And you argue that the notice of appeal as to the June 22, 2020 decision was also untimely. You say it was filed 31 days later rather than 30. Is that correct? I do say that, Your Honor, yes. Yeah. And it looks to me as though they attempted to file on July 22, which would have been just under the wire, but it was a deficient filing. Correct. And should we not look at that filing even though it was deficient as timely? Can't we excuse its deficiency since they promptly corrected that? Well, again, the correct procedure, Your Honor, would have been by Mr. Lobbin receiving notice from the court that his appeal was rejected. He could have challenged that rejection or he could have sought an extension of time to correct the matter. He did neither, and he hasn't appealed the question of whether the July 23 notice of appeal was improper. What was the basis of the deficiency finding by the clerk's office? Do you know? I believe the deficiency, Your Honor, was that when you're filing the ECF, you're required to designate the case numbers that are associated with the notice of appeal, and that wasn't done. I see. And we found actually two cases on that, not exactly the— So those are not cited in your brief? Oh, they are cited, Your Honor. Oh, okay. So I'm going to find them here. Sorry. One of them was Your Honor's case, actually. It is the Franklin case, which is Second Circuit case 2015, Franklin v. McHugh. And then a second case was Contino v. United States, also Second Circuit. Okay, thank you. But I think the key point there is that Mr. Lobbin should have sought motion practice and corrected it. And he didn't correct it, so here we now stand with—and if you look at the docket for the Second Circuit, it identifies July 23, which is 31 days and a day later. Okay, thank you. And, Your Honor, if I just may briefly address the cross-appeal. Briefly, again, we believe that magistrates post the 2000 edits to Section 636, adding, for example, a contempt rights or rule—permission for magistrates to rule on contempt proceedings, but that follows in line with Rule 11 sanctions, and the Rule 11 sanctions are not specifically excluded in Section 636. And we believe that actually Judge Torres was correct to initially transfer the case for sanction quantification to the magistrate. It's a nondispositive, and we believe that that's an open issue in view of the Kiobo case, and that's before the Second Circuit. Thank you. Very good. Thank you very much. Mr. Lobbin, you have two minutes of rebuttal. Thank you, Your Honor. It's clear from the energy in this courtroom coming from this podium by my opponent, this is not about deterrence. This is about retribution, putting me into bankruptcy, which is what will happen. I carry a picture with my wife in my notebook all the time. It's here with me today. My daughter made this bracelet for me. If that's what it's about, it's certainly about that. It's clear it's about that for him and his big firm and his big client. I understand that. I was at a big firm. Could you pull your mask up over your nose, please? Thank you. For me, this is about Rule 11. Must be limited what is necessary for deterrence. It says nothing. I understand there's big fees. I was at a big firm. I know big fees run up quick. This is not about that. That error needs to be corrected. And if we want to talk about procedural errors, sure, I made some. What's our standard of review here for the decision of the magistrate judge? It's abuse of discretion. Right. And so how did the judge abuse his or her discretion, the magistrate judge, in setting the fee? Well, first, in Judge Torres' order, she said the sanctions will be the fees and costs incurred by the opponent, which completely ignores Rule 11. They took that and used it to present to the magistrate judge, which didn't question what Judge Torres had said, who, again, re-erred under the standard of Rule 11. And I want to focus on some procedural points. Where's the judgment? Did you take that back to the district court after the fees were announced? We did. And she said, well, she affirmed the report and recommendation, and she sent us on our way. Given how outrageous you found the fee amount and award, I'm very surprised that you filed no objections in the two-week time that was allotted. Can you explain that? Yes. There are lots of— Just take a minute because we're done. Yes. Quickly. District court entered an order. The clerk on the next Monday entered a judgment. That judgment was improper. We have no final judgment. It was improper because the issue of the amount of sanctions had not been decided, a dispositive issue. Next, that issue went to the magistrate judge. Magistrate judge issued an order on, as designated, a nondispositive issue, which we then objected to in the form of a motion for reconsideration within 14 days. That was not labeled objections to magistrate judge finding. Correct, because it was not a dispositive issue, because the court had misdesignated, which it later corrected, to say, no, amount is a dispositive issue. Of course it is. How would we know whether we need to appeal if we've been assessed a Rule 11 violator but no amount has been determined? If it's $5, we just pay it and we move on. If it's $133,000, obviously we now have an issue, obviously a dispositive issue, which came after the only judgment entered in this case. The only judgment ever entered by the district court clerk in this case was void because it was not entered with a ruling on a dispositive issue. All right. We still don't have a judgment. Thank you very much. There's still been no entry of judgment. We have your papers. We will review them carefully. Thank you both for your arguments. We'll reserve decision. That concludes our oral arguments this morning. The clerk will please adjourn court. Court is adjourned.